UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vladimir Kogan, M.D.,

        Plaintiff,

v.

James B. Peake, M.D.,
Secretary of the Department
of Veterans Affairs,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-16 ADM/JJK

___

Vladimir Kogan, M.D., pro se.

Friedrich A. P. Siekert, Esq., Assistant United States Attorney, Minneapolis, MN, argued on behalf of Defendant.

___

## I.  INTRODUCTION

On February 23, 2009, the undersigned United States District Judge heard oral argument on the Motion to Dismiss or for Summary Judgment [Docket No. 44] of Defendant James B. Peake, M.D., Secretary of the Department of Veterans Affairs ("the Secretary").  In his Amended Complaint [Docket No. 2], Plaintiff Vladimir Kogan, M.D., ("Dr. Kogan") asserts a claim for breach of a Settlement Agreement between himself and the Minneapolis Veterans Affairs Medical Center ("MVAMC").  For the reasons set forth below, the Secretary's Motion to Dismiss is granted.

## II. BACKGROUND

In July 1985, Dr. Kogan, a Russian immigrant, accepted a position at the MVAMC as a full-time staff physician in the radiation oncology department.  Kogan Dep. [Docket No. 48] 4:16-18, 23:17-24:16.  He worked in the department for the next fifteen years until February

2000, when he was placed on administrative leave pending an investigation into his medical practices. Kogan Aff. [Docket No. 55] ¶¶ 9, 13; Kogan Dep. 41:10-44:8. Because Dr. Kogan was not practicing in his speciality of radiation oncology while he was on administrative leave, the MVAMC stopped paying the "Scarce Speciality pay" component ($40,000) of his annual salary. Johnson Decl. [Docket No. 50] ¶ 7. In April 2001, Dr. Kogan was allowed to return to the MVAMC, but he was reassigned to the compensation and pension department, and the MVAMC did not reapply the Scarce Specialty pay addition to his salary. Id.; Kogan Dep. 45:1-13. According to Dr. Kogan, the MVAMC also changed his "assignment code" from radiation oncology to "internal medicine/sport medicine." Kogan Aff. ¶¶ 18-19.

In February 2001, Dr. Kogan filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the MVAMC discriminated against him on the basis of his age and national origin. Id. ¶ 17. The parties eventually settled the EEOC matter and executed a settlement agreement dated April 29, 2002 ("the Settlement Agreement"). Kogan Dep. 50:22-25; Kogan Aff., Ex. G.; Siekert Decl. [Docket No. 49], Ex. 1. Under the terms of the Settlement Agreement, Dr. Kogan agreed to waive his discrimination claims and MVAMC agreed to, inter alia, (1) restore Dr. Kogan's full privileges in the radiation oncology department; (2) allow Dr. Kogan to work one day a week in radiation oncology and work four days a week in compensation and benefits; (3) take no action to reassign or remove Dr. Kogan from the compensation and pension department or the radiation oncology department; (4) maintain a non-threatening, collegial work environment for Dr. Kogan in the same manner as MVAMC provides for other physicians; (5) pay Dr. Kogan $174,357 per year (this amount included the $40,000 in Scarce Speciality pay), which was "the effective salary for a physician in the Radiation

Oncology Department immediately upon signing of the Settlement Agreement"; and (6) pay Dr. Kogan a lump sum for the Scarce Speciality pay he had not received since July 2001. Kogan Aff., Ex. G §§ 2.B, 3.B-F.

In 2004, Congress passed a law that changed the method for calculating the salaries of physicians working for the Department of Veterans Affairs. Johnson Decl. ¶ 9. The new system implemented in response to the change in the law became effective with the first pay period of 2006. Id. Dr. Kogan disagreed with his salary calculation under the new system, and he complained to the human resources department about his salary in July 2007. Kogan Dep. 69:5-12, 71:17-72:19. In a letter dated August 17, 2007, to the Office of Resolution Management for the Department of Veterans Affairs, Dr. Kogan claimed that the determination of his salary breached the Settlement Agreement. Siekert Decl., Ex. 2. He also claimed that the MVAMC had failed to comply with the provision in the Settlement Agreement requiring that the MVAMC provide him a non-threatening, collegial work environment. Id. The Office of Resolution Management denied Dr. Kogan's claims and determined that no breach of the Settlement Agreement had occurred. Kogan Dep. 77:11-14, Siekert Decl. Ex. 4 at 6-7. Kogan then filed this action on January 3, 2008.

### III.  DISCUSSION

**A.     Motion to Dismiss Standard**

The Secretary moves to dismiss Dr. Kogan's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction may challenge the complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v.

United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Here, the parties refer to matters outside the pleadings, and, therefore, the Court construes the Motion as a factual attack.  In a factual attack, "'the trial court is free to . . . satisfy itself as to the existence of its power to hear the case.'"  Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002) (quoting Osborn, 918 F.2d at 730.  Thus, "[t]he district court has the authority to consider matters outside the pleadings."  Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir. 1993).  And the consideration of such matters does not convert the motion to dismiss into a motion for summary judgment.  Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998).  The burden is on the plaintiff to establish that jurisdiction exists, and "[i]t is not the responsibility of [the] defendant[] to prove otherwise."  Garreaux v. United States, 544 F. Supp. 2d 885, 890 (D.S.D. 2008) (citing Titus, 4 F.3d at 593 n.1).

**B.    Sovereign Immunity and Jurisdiction of Contract Claims**

Dr. Kogan alleges that the MVAMC breached provisions of the Settlement Agreement by taking action to reassign him to a different position, failing to pay him the effective salary for a full-time staff physician in the radiation oncology department, and failing to maintain a non-threatening, collegial work environment.  Am. Compl. at 3-4.  As relief for his claim, he requests: (1) that he be restored to his position as a full-time staff physician in the radiation oncology department; (2) that he be paid "100% effective salary for the full time physician in the Radiation Oncology Department equal to $356,000"; (3) compensation for lost salary since January 8, 2006, which he asserts is when the MVAMC stopped paying him 100% effective salary for a physician in the radiation oncology department; (4) an order directing the MVAMC to provide him a non-threatening, collegial work environment; (5) "$356,000 as compensation

for irreversible medical [p]roblems, pain and suffering resulting from employment conditions"; and (6) an order requiring an "[a]ppropriate investigation into . . . bias, discrimination and retaliation against [him]." Id. at 5.

To sue the United States, Dr. Kogan must show both a waiver of sovereign immunity with respect to his claims and a grant of subject matter jurisdiction. See V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). A waiver of sovereign immunity is a prerequisite for jurisdiction. United States v. Mitchell, 463 U.S. 206, 212 (1983). Under the doctrine of sovereign immunity, the United States may be sued only to the extent that it has consented to be sued. United States Dep't of Energy v. Ohio, 503 U.S. 607, 615 (1992). A waiver of sovereign immunity must be unequivocally expressed in statutory text, and the scope of a wavier of sovereign immunity is strictly construed in favor of the sovereign. Miller v. Tony & Susan Alamo Found., 134 F.3d 910, 915 (8th Cir. 1998) (citing United States v. Nordic Village, Inc., 503 U.S. 30, 34, 37 (1992)). In the absence of a waiver of sovereign immunity, a district court lacks subject matter jurisdiction. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994).

Kogan's breach of contract action[1] against the United States, implicates the Tucker Act, 28 U.S.C. § 1491(a)(1). The Tucker Act provides that the United States Court of Federal Claims "has jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages

---

[1] "[A]n action to enforce a settlement agreement is a claim for breach of contract." Myers v. Richland County, 429 F.3d 740, 745 (8th Cir. 2005) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994)); see also Greenhill v. Spellings, 482 F.3d 569, 575 (D.C. Cir. 2007) (holding that a suit to enforce a settlement agreement is a breach of contract claim for purposes of the Tucker Act).

in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The United States district courts "have original jurisdiction, concurrent with the United States Court of Federal Claims," over any such claims that do not exceed $10,000 in amount.  28 U.S.C. § 1346(a)(2).  Jurisdiction over any Tucker Act claim exceeding $10,000 is exclusive to the Court of Federal Claims.  Eastern Enterprises v. Apfel, 524 U.S. 498, 520 (1998).  The jurisdictional grants in the Tucker Act constitute a waiver of sovereign immunity with respect to contract claims.  Mitchell, 463 U.S. at 212 (footnote omitted).

The Tucker Act largely limits the Court of Federal Claims to awarding monetary damages.  V S Ltd. P'ship, 235 F.3d at 1112.  In 1972, the Tucker Act was amended to authorize the Court of Federal Claims to award specific equitable relief in certain circumstances, including "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," and "[i]n any case within its jurisdiction, . . . to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  Bowen v. Massachusetts, 487 U.S. 879, 915 n.1 (1988) (Scalia, J. dissenting).  The statutory language expressly limits the authority of the Court of Federal Claims to grant such equitable relief only "as an incident of and collateral to any" monetary judgement and only in order "[t]o provide an entire remedy and to complete the relief afforded by the judgment."  28 U.S.C. § 1491(a)(2).  However, this grant of jurisdiction to award incidental and collateral equitable relief is exclusive to the Court of Federal Claims.  See V S Ltd. P'Ship, 235 F.3d at 1112.

In V S Limited Partnership, a plaintiff brought an action in district court against the Department of Housing and Urban Development for breach of an alleged oral modification of a

forbearance agreement.  Id. at 1111.  The plaintiff raised breach of express and implied contract claims and sought equitable relief or, alternatively, monetary relief in excess of $10,000.  Id.  The plaintiff argued that because its lawsuit primarily sought equitable relief, jurisdiction was not exclusive to the Court of Federal Claims and the district court should have retained jurisdiction over its claims to the extent they sought equitable relief.  Id. at 1112.  The Eighth Circuit disagreed, holding that because all of the plaintiff's claims arose from an express or implied contract, the district court did not err in refusing to retain jurisdiction over the claims seeking equitable relief.  Id.  The court explained:

> It is true that the Tucker Act largely limits the Court of Federal Claims to awarding money damages.  However, the limit on remedies available in that court does not waive the United States' sovereign immunity and create subject matter jurisdiction in another court for [plaintiff's] claim to an alternate form of relief.  Rather, the Tucker Act first vests exclusive jurisdiction over all contract actions exceeding $10,000 against the United States in the Court of Federal Claims, and then limits the remedies available in that court.  The Tucker Act does not confer concurrent jurisdiction over all equitable claims in the district courts.

V S Ltd. P'Ship, 235 F.3d at 1112 (footnote omitted) (citations omitted).

Like the plaintiff in V S Limited Partnership, Dr. Kogan argues that his action primarily seeks equitable relief.  Pl.'s Mem. in Opp'n [Docket No. 54] at 28.  And like the plaintiff's claims in V S Limited Partnership, Dr. Kogan's claim arises solely from a contract (the Settlement Agreement) with the United States.  While Dr. Kogan at times alludes to "bias, discrimination[,] and retaliation," Am. Compl. at 5, at no time does he assert any basis for his claim apart from the alleged breaches of the Settlement Agreement.  Dr. Kogan does not, for example, allege violations of Title VII as the basis for his claim in this action.  To the contrary, he is explicit in averring that all of the wrongful actions stem from his breach of contract

allegation. Although pro se complaints, "however inartfully pleaded," are to be held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "a district court should not assume the role of advocate for the pro se litigant," nor may a district court "rewrite a [complaint] to include claims that were never presented," Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (quotations omitted), cited with approval in Palmer v. Clarke, 408 F.3d 423, 444 n.15 (8th Cir. 2005). Therefore, the Court will not rewrite Dr. Kogan's Complaint to assert claims that were not pleaded.

Because the monetary relief sought by Dr. Kogan in his breach of contract claim exceeds $10,000, jurisdiction over his claim lies exclusively with the Court of Federal Claims. Further, the sole basis for the equitable relief sought by Dr. Kogan's claim arises from alleged breaches of the Settlement Agreement, for which there is no waiver of sovereign immunity as to this Court. Therefore, subject matter jurisdiction to grant the equitable relief Dr. Kogan seeks in his breach of contract claim is lacking. See V S Ltd., 235 F.3d at 1112. Accordingly, the Court must grant the Secretary's motion to dismiss for lack of subject matter jurisdiction.[2]

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 44] is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED**.

---

[2] "District courts shall, 'in the interests of justice,' transfer actions over which they lack jurisdiction to any court in which the action could have originally been brought." V S Ltd., 235 F.3d at 1113 (quoting 28 U.S.C. § 1631). However, when, as here, a plaintiff has not petitioned for transfer or "articulated . . . any reason why such transfer is necessary in the interest of justice," a district court is within its discretion in declining to transfer the action. See Id.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 23, 2009.